# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | |
| RANDY L. CASH, DEBORA B. CASH, HOMESTEAD STEAK HOUSE, INC., and ERIE INSURANCE COMPANY, | ) ) ) ) ) | **MEMORANDUM OPINION AND RECOMMENDATION** 1:09-CV-396 |
| Defendants/Counter-Plaintiffs, | ) ) | |
| and | ) ) | |
| SAM DENTON, INC. d/b/a GENERAL BUILDING SYSTEMS, GENERAL BUILDING SYSTEMS, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

In this case an insurance company seeks a declaratory judgment regarding the company's obligation to provide coverage to its insureds. Pending before this court is a motion to dismiss (docket no. 26) brought by Defendants Randy L. Cash, Debora B. Cash, Homestead Steak House, Inc. ("Homestead"), and Erie Insurance Company ("Erie Insurance"). Defendants move alternatively for the court to stay the proceedings in favor of a parallel state court action currently pending in Person County Superior Court. Plaintiff has filed a brief in opposition to the motion and, in this posture, the matter is ripe for disposition. Since there has been no consent to

the jurisdiction of the magistrate judge, I must deal with the motion by way of a recommendation. For the reasons stated herein, I will recommend that the district court decline to exercise jurisdiction and dismiss this action without prejudice to the parties to litigate in state court the coverage issues raised here.

**Background**

This declaratory judgment action addresses the scope of coverage of an insurance policy issued by Plaintiff Auto-Owners Insurance Co. ("Plaintiff" or "Auto-Owners") to Defendant Sam Denton, Inc. ("SDI") and General Building Systems ("GBS"). Plaintiff seeks a declaration from this court that the policy does not cover damages incurred after the collapse of a partially constructed addition to a restaurant on March 12, 2005. The owner of the restaurant is Homestead, which is wholly owned and operated by Randy L. Cash and Debora B. Cash. The Cashes had contracted with the insureds SDI and GBS to supply and install a steel frame for the addition. SDI and GBS in turn subcontracted the work to Armando Hernandez ("Hernandez") and Andrew Young ("Young"), who operate a general partnership known as A and A Walls and Ceilings ("A and A Walls"). Hernandez and Young have insurance coverage for their partnership through American Southern Insurance Company.

On March 12, 2005, Hernandez's crew left the job site for lunch when a wind storm of up to 39 mph passed through the area, and the structure collapsed, causing significant building damage. On December 22, 2005, the Cashes and Homestead

filed a complaint in Person County Superior Court against SDI and GBS for damages caused by the collapse. The lawsuit alleged claims against SDI and GBS for breach of contract, breach of warranty, and negligence. On November 19, 2007, the Cashes and Homestead filed a second amended complaint, adding several defendants, including Hernandez and Young.

On February 13, 2009, a jury rendered a verdict in favor of the Cashes and Homestead on their breach of contract and breach of warranty claims. Plaintiff Auto-Owners defended SDI and GBS in the lawsuit under a reservation of rights. The verdict against the insureds SDI and GBS totals $519,823, exclusive of costs and interest.[1] On February 12, 2009, the day before the civil jury verdict was rendered in state court, Plaintiff Auto-Owners filed this declaratory judgment action against the Cashes, Homestead, SDI, GBS, and Erie Insurance, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]

In this action, Plaintiff Auto-Owners alleges upon information and belief that at the time of the collapse, the Cashes and Homestead were insured under a commercial property casualty policy issued by Erie Insurance. The complaint further alleges that the Erie Insurance policy covered damages arising from the wind storm on March 12, 2005, and that, pursuant to that policy, Erie Insurance made payments

---

[1] The court had earlier entered summary judgment against Hernandez in the amount of $464,928.

[2] The action was originally filed in the Western District of North Carolina, but it was subsequently transferred to this court.

to the Cashes and Homestead for damages arising from the building collapse that was the subject of the Cash lawsuit. Plaintiff further seeks a declaration from this court that the allegations in the Cash lawsuit do not trigger any duty to defend or indemnify under Plaintiff's policy, and that the damages claimed in the Cash lawsuit are not covered by Plaintiff's policy.

On March 31, 2009, the Cashes, Homestead, and Erie Insurance filed a declaratory judgment action of their own in Person County Superior Court against Plaintiff, SDI, GBS, American Southern Insurance Company, Young, and Hernandez. In the parallel state action, the plaintiffs seek, among other things, a judgment from the state court on the same coverage issue raised here. On April 16, 2009, the Cashes, Homestead, and Erie Insurance filed a motion to dismiss or, alternatively, to stay this action pursuant to 28 U.S.C. § 2201(a) and Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**Standard of Review and Discussion**

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act gives the court the discretion to decline issuing the judgment. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). The court's discretion must be informed by considerations of federalism, efficiency, and comity. *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (*abrogated on other*

*grounds by Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257-58 (4th Cir. 1996)). In *Aetna Casualty & Surety Co. v. Quarles*, the Fourth Circuit noted its preference not "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." 92 F.2d 321, 325 (4th Cir. 1937). The court further stated that if a judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and if it will (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," then courts should normally entertain the declaratory judgment action. *Id.* at 325. Finally, the court observed that a court will normally refuse to entertain a declaratory judgment action where, among other things, "a proceeding involving identical issues is already pending in another tribunal." *Id.*

In addition, the Fourth Circuit in *Nautilus Insurance Co. v. Winchester Homes, Inc.* presented four factors courts must consider when faced with deciding whether to retain jurisdiction in a federal declaratory judgment action: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state could resolve the issue more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere "procedural fencing." 15 F.3d at 377. With these principles in mind, I now turn to the motion to dismiss.

*Factor 1: North Carolina's interest in having the issues raised here decided in the state courts.*

I first consider the North Carolina state courts' interest in having the coverage issue raised here decided in the state courts. In addressing this factor, this circuit's court of appeals has acknowledged that a state court will have a particularly strong interest in resolving an issue of state law that is particularly "close," "difficult," or "problematic." *See, e.g., Nautilus Ins. Co.*, 15 F.3d at 378; *see also Aetna Cas. & Sur. Co. v. Alpha Mech., Inc.*, 9 F. Supp. 2d 585, 588 (W.D.N.C. 1998) ("This case . . . raises important issues of unclear state law in which the State of North Carolina has an important interest. . . . . Under these circumstances . . . the Court finds that the courts of the State of North Carolina should decide this issue."). Thus, finding that the state law at issue is not entirely settled is a factor weighing against the federal court's exercise of jurisdiction.

Defendants contend that the issues in this case are both unsettled and otherwise problematic. According to Defendants, Plaintiff Auto-Owners contends that the collapse of the building was due solely to the poor workmanship of the insureds and the collapse therefore does not constitute an "occurrence" under the liability policy at issue. Defendants contend that the North Carolina appellate courts have not yet definitively ruled on the issue of whether poor workmanship constitutes an "occurrence" under a liability policy. Defendants also contend that no North Carolina state cases have involved instances in which significant weather events

-6-

may have contributed to the accident and served as a separate basis for an occurrence, thereby giving rise to coverage.

Finally, Defendants note that in the prior trial in state court, the Cashes introduced expert testimony showing that the collapse would not have occurred but for the wind in conjunction with the poor bracing. Defendants note that the defendants in the prior trial did not refute this evidence and that it served as a basis for the jury's verdict. Defendants contend that the case is problematic because Plaintiff Auto-Owners believes it is entitled to relitigate the causation issues and believes it may now present evidence that wind was not a factor in the structure's collapse. Defendants contend that this request would directly challenge the binding and conclusive effect of a unanimous jury verdict and raises issues of *res judicata* and collateral estoppel. Defendants contend that for these reasons, North Carolina has a compelling interest in deciding these unsettled issues, which strongly favors dismissal.

First, I agree with Plaintiff that North Carolina law is neither unsettled nor problematic. Although North Carolina courts may not have addressed precisely the coverage facts raised here, the North Carolina courts have generally addressed what constitutes an "occurrence" and "property damage," as well as various policy exclusions such as poor workmanship, under a GCL policy such as the one at issue here. *See, e.g., Barbee v. Harford Mut. Ins. Co.*, 330 N.C. 100, 103, 408 S.E.2d 840, 842 (1991) (stating that the liability policy did not cover faulty workmanship);

*Prod. Sys., Inc. v. Amerisure Ins. Co.*, 167 N.C. App. 601, 607, 605 S.E.2d 663, 667 (2004) (holding that there was no "property damage" within the meaning of the policy, but merely repair of defects caused by faulty workmanship in initial construction); *Hobson Constr. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 591, 322 S.E.2d 632, 635 (1984) (holding that a policy definition of "property damage" did not encompass damages for the cost to complete or repair improper workmanship); *Wayne Bros., Inc. v. N. River Ins. Co.*, No. 1:01cv00842, 2003 WL 22213615, at *6 (M.D.N.C. Aug. 20, 2003) (noting that the "law in North Carolina is clear that the costs of repair and completion of an insured's own faulty workmanship is a foreseeable business risk that is properly remedied by a performance bond rather than a [commercial general liability] policy"). Thus, I do not agree that North Carolina law is unsettled or problematic; as Plaintiff notes in its brief, the coverage issue raised here is one of applicability, rather than interpretation, of state law.

Furthermore, I do not agree with Defendants that possible issues of *res judicata* or collateral estoppel favor dismissal of this action. It is true that if the jury in the prior trial found that wind gusts contributed to the building collapse, then under collateral estoppel principles, it appears that this fact may not be relitigated in this or any other action regarding coverage. This fact does not, however, favor having the insurance coverage issue litigated in state court over this court.[3] In sum, this first

---

[3] To the extent, however, that there is a disputed issue as to whether the jury in the prior state court trial, in fact, found that wind contributed to the collapse, the state court arguably has more of an interest in resolving, and can more efficiently resolve, that issue

*Nautilus* factor does not weigh against this court's exercise of jurisdiction in this matter.

*Factors 2 & 3: Whether the coverage issues raised here can be more efficiently resolved in the pending state court action and whether permitting this action to go forward would result in unnecessary "entanglement" between the federal and state courts.*

Defendants contend that the North Carolina state court can resolve more efficiently than this court the coverage issue raised here. Defendants first contend that the parallel state action is more comprehensive than this action. That is, the parallel state court action includes three additional parties: insurer American Southern, Hernandez, and Young, and it involves a significant issue that will not be decided here–that is, the enforceability of a particular exclusion in the American Southern policy.

Second, Defendants contend that because American Southern, Young, and Hernandez are not parties to this action, it is impossible to resolve in this action all of the coverage issues arising from the February 23, 2009, judgment in the Cash lawsuit. Defendants contend that denial of this motion will result in two pending lawsuits involving similar claims, which would be an inefficient use of judicial resources. Finally, Defendants note that American Southern, Young, and Hernandez are not necessary parties to this matter, nor does Auto-Owners have

---

than this court.

standing to sue them; thus, allowing this action to go forward will require the parties to try the coverage issues arising from the underlying trial in piecemeal fashion.

In response, Plaintiff contends that the fact that the pending state action includes additional issues, policies of insurance, and parties actually weighs in favor of this court retaining this action because this action can simply dispose of all issues relating to the Cash defendants' demand for payment of the judgment under the Auto-Owners policy. I disagree and find that the existence of additional parties and issues in the pending state action strongly weighs in favor of dismissal of this action. That is, allowing both actions to go forward will result in piecemeal litigation, whereas the state court action can comprehensively address the coverage issue raised here as well as other issues raised in the state court action. Therefore, this factor weighs in favor of dismissal of this action.

Similarly, as to potential entanglement of the federal and state court systems, any decision that this court makes regarding coverage will preclude the parties from relitigating that issue in the pending state court action. As noted, Plaintiff Auto-Owners is a named defendant in the pending state court action, and the coverage issue raised here is also at issue in the pending state court action. Moreover, the claims against the additional insurer in the parallel state action, American Southern, involve the same set of facts as in this action because both actions arise out of the same construction accident, and both claims also involve substantially the same damages. Thus, there is a possibility of inconsistent rulings. In sum, there is a clear

threat of unnecessary entanglement between the state and federal courts in this case, and this factor weighs against this court exercising jurisdiction. *See United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) (observing that entanglement is a "genuine possibility" where "both actions raise[] the same core issues of law and fact, and [where] both actions aim[] at determining the rights of the parties under the insurance policy").

*Factor 4: Whether the federal action is being used merely as a device for procedural fencing.*

Defendants contend that there is clear evidence of procedural fencing in this case.[4] Defendants note that beginning in December 2007 the Cashes informed Plaintiff that they intended to file a declaratory judgment action of their own once they had rights to proceed by virtue of obtaining a judgment at trial. Defendants further note that on December 19, 2007, after court-ordered mediation resulted in an impasse, the Cashes specifically asked Plaintiff to file a declaratory judgment action.[5] On January 2, 2008, the Cashes renewed this request, informing Plaintiff that a verdict in the Cashes' favor was likely, and suggesting to Plaintiff that it would save all parties time and expense if it immediately filed a declaratory judgment action

---

[4] Procedural fencing is where an action is used to provide a different forum in a race for *res judicata* or to obtain a federal hearing in a case otherwise not removable. *Nautilus*, 15 F.3d at 380.

[5] As Defendants note, the Cashes could not file a declaratory judgment action themselves because they were not the policy holders, nor had they obtained a judgment against SDI and GBS.

and obtained an early ruling on coverage. Specifically, the Cashes informed Plaintiff that if the court ruled that there was no coverage under Plaintiff's policy, then the Cashes would not pursue their claims against SDI and GBS because those companies were nearly insolvent. Plaintiff again refused.

The Cashes renewed their request in October 2008, but Plaintiff again refused to file a declaratory judgment action. As Defendants note, Plaintiff did not file this action until February 12, 2009, just after the Cashes had rested their case in the Cash lawsuit and before the jury reached its verdict. Defendants contend that this action is clearly a "pocket lawsuit" that Auto-Owners was anticipating filing once it appeared that the Cashes would be successful at trial. Defendants contend that, by contrast, the Cashes filed their own parallel state action within a week after they had vested rights to proceed under the Auto-Owners' policy (i.e., once the appeals period had expired), which was two months after this action was filed. Defendants contend that deference should be given to the "true" plaintiffs, and their "legitimate interests" of forum and timing should be protected.

In response, Plaintiff contends that it has not engaged in procedural fencing. Plaintiff contends that no determination could have been made as to its duty to indemnify until the facts were ultimately determined at trial; therefore, the filing of any action for declaratory judgment on indemnity was not ripe. Plaintiff further contends that when counsel for Plaintiff and the Cash defendants met beginning in October 2008, with discussions continuing into 2009, about the scope of a potential

declaratory judgment, Plaintiff's counsel repeatedly discussed with the Cash defendants' counsel Plaintiff's intent to file a declaratory judgment action once the facts were determined at trial. Plaintiff further notes that during these discussions the Cash defendants had agreed to enter into a stipulation of facts only if the stipulation included an admission of negligence by SDI and GBS. In sum, Plaintiff contends that it did not engage in procedural fencing and that it simply waited until the action was ripe to file this action.

Here, I first note that the mere fact that Plaintiff chose to file in federal court, rather than in state court, where both courts are proper, is insufficient to be considered "procedural fencing." *See Nautilus*, 15 F.3d at 380. Nevertheless, there does appear to be some evidence that Plaintiff "raced to the courthouse" to get this action filed before the Cash defendants could file their own declaratory judgment action. Although this factor does not weigh heavily on the court's decision, I agree with Defendants that there is some evidence of procedural fencing in this case.

After having considered the four *Nautilus* factors, I find that the possibility of entanglement between this court and the state court in the parallel state court action, as well as concerns over efficiency, weigh in favor of declining to exercise jurisdiction in this case. If this action is dismissed to allow the litigants to proceed in the more comprehensive state court action, there will be no risk of inconsistent rulings, and it is simply more efficient to allow the insurance coverage claims to be determined in the parallel state court action. *Accord Cont'l Cas. Co. v. Fuscardo*,

35 F.3d 963, 966 (4th Cir. 1994). For all these reasons, it will be recommended that the district court grant the motion to dismiss.

**Conclusion**

For all the foregoing reasons, **IT IS RECOMMENDED** that the district court **GRANT** Defendants' motion to dismiss (docket no. 26) this action without prejudice to the parties to litigate in the pending state court action the insurance coverage issues raised here.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
August 20, 2009